IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WALTER CHRUBY, | : | Civ. No. 3:17-CV-1631 |
| Plaintiff, | : | |
| | : | (Judge Mannion) |
| v. | : | |
| | : | (Magistrate Judge Bloom) |
| KIRK BEARJAR, et al., | : | |
| Defendants. | : | |

REPORT AND RECOMMENDATION

I. Introduction

This case comes before us on a motion for summary judgment filed by the five remaining defendants in this case. (Doc. 119). The plaintiff, Walter Chruby, is an inmate in the Pennsylvania Department of Corrections ("DOC") who filed this suit against a host of correctional staff at varying prisons across the state. (Doc. 1). The remaining defendants are the former Secretary of Corrections, John Wetzel, and four individuals who were employed at the State Correctional Institution at Laurel Highlands while the plaintiff was incarcerated there in 2016—Kirk Bearjar, Annette Kowalewski, Jamey Luther, and Jennifer Shrock. Chruby contends that these individuals violated his First and Eighth Amendment rights when they retaliated against him for filing grievances

and lawsuits and were deliberately indifferent to his serious medical needs. (*See generally* Doc 1).

These defendants have now moved for summary judgment, arguing that there are no genuine disputes of material fact regarding these claims. (Doc. 119). After consideration, we agree and recommend that this motion for summary judgment be granted.

## II. Background[1]

Walter Chruby was incarcerated at SCI Laurel Highlands in 2016. Chruby suffers from a kidney condition, which resulted in him having one kidney removed and the remaining kidney reimplanted and attached to his pelvis. Because of his condition, Chruby suffers from urinary tract infections ("UTIs") that, at times, require hospitalization outside of the DOC. Throughout his incarceration in the DOC, Chruby requested a "Z code," or single-cell status, so that he could be housed by himself because of his kidney issues.

Regarding Chruby's requests for a single cell, the record contains a letter dated March 25, 2015, written to the Medical Director of the

---

[1] The factual background of this Report and Recommendation is taken from the parties' submissions to the extent those submissions are consistent with the evidence in the record. (Docs. 120-22, 127-28).

2

Bureau of Health Services, Paul Noel, M.D., from the Deputy Chief Clinical Officer for Correct Care Solutions, Dean Rieger M.D. (Doc. 122-22). Dr. Rieger reviewed Chruby's medical history, spoke with medical staff at SCI Laurel Highlands, and concluded that Chruby's request for a single cell was not medically necessary. Among other things, Dr. Rieger opined that the alleged unsanitary conditions of which Chruby was complaining would not increase the likelihood of his kidney infections.

Relevant to the instant motion, Chruby again requested to be placed in his own cell via a letter to the Superintendent of SCI Laurel Highlands, Jamey Luther, in January of 2016. (Doc. 122-14). In this letter, Chruby asserted that having his own cell would give him the ability to clean himself properly, thereby decreasing his risk of infection, which he claimed was impossible to do with another inmate in the room.[2] He specifically asked Luther if he could be moved to unit 11 on D Block, the medical block where he had been housed for some time. Of note, while Chruby characterized this unit as a "single cube," the correctional

---

[2] Curiously, while Chruby's letter requests a single cell based on his belief that it would lower his infection rate, he further states that prior to August of 2014, he had gone more than 2 years without an infection requiring hospitalization, although he was not in a single cell at that time.

defendants unanimously testified that there were no single cubes on D Block; rather, this cube was a two-man cube that only had one bed in it at the time, as the other bed was being repaired. (*See* Doc. 122-7 at 11-12; Doc. 122-9 at 7; Doc. 122-12 at 13). In response to Chruby's letter, Luther directed him to work with Defendant Bearjar, the Unit Manager on D Block, and with the Corrections Health Care Administrator ("CHCA"), Defendant Kowalewski, about moving cells.

Chruby was ultimately moved into unit 11 on D Block in February of 2016. According to Bearjar, he explained to Chruby that the move had nothing to do with his medical request for single-cell status, and that it was because bed space was available at that time. (Doc. 127-7 at 2). For his part, Chruby contends that Bearjar assured him that if he did not cause any problems, he would be permitted to remain in the cell by himself. However, roughly three weeks later, Chruby wrote to Luther advising her that Bearjar had put another bed in unit 11 and told Chruby that he was placing a cellmate in there soon. (Doc. 122-19). An email written by Kowalewski on February 26, 2016, indicated that a 92-year-old inmate, inmate Welsh, was chosen to be housed with Chruby because

Chruby was a paid peer specialist, and Welsh needed assistance that Chruby could provide. (Doc. 122-21).

It appears Luther was already aware of this development, as she had directed Bearjar one day prior to put a cellmate in unit 11 with Chruby. (Doc. 122-20). Additionally, an email chain between Kowalewski, Bearjar, and Shrock indicated that Kowalewski wanted another inmate placed with Chruby, opining that "[i]t is never a good idea to keep him single celled for very long without a good medical/mental reason." (Doc. 1278 at 2). A second email chain between Luther, Kowalewski, and Bearjar indicated that Kowalewski was concerned that Chruby being celled alone for too long could cause issues regarding his past requests for single-cell status. (Doc. 127-8). Ultimately, inmate Welsh was placed in unit 11 with Chruby. Beginning in April, Chruby experienced several UTIs that required hospitalizations. (*See* Doc. 127-11).

For his part, Chruby asserts that Bearjar placed Welsh in unit 11 with him because Bearjar was tired of Chruby's complaints and litigation. He alleges that Bearjar taunted him and joked that he was going to find a "special" inmate to cell with Chruby. He claims that

5

Bearjar specifically referenced his lawsuits and referred to Chruby as being overzealous with litigation, statements Bearjar specifically denies making.

Between August and October of 2016, at the request of Chruby and his counsel at that time, several outside medical providers submitted letters in support of Chruby being housed in a cell by himself.[3] Dr. Matthew Davidson, D.O., reviewed Chruby's records and opined that Chruby should always be housed in a single cell with access to his own urinal. (Doc. 127-12). Dr. Mang Chen, M.D., provided a letter after receiving correspondence from Chruby detailing his living conditions at the prison and opined that Chruby's risk of infection would decrease in a single cell environment. (Doc. 127-13). Dr. Paul Rusilko, D.O., provided a letter in October of 2016 suggesting that Chruby should be provided a "clean facility for completing his self-catheterizations" to reduce his risk of infection. (Doc. 127-15). Finally, Dr. Robert Eyre, M.D., opined in

---

[3] We are constrained to note that these letters provided by the non-DOC physicians are unsworn statements that were not given under the penalty of perjury. Accordingly, while they provide factual context, they cannot be used to create a genuine issue of material fact to defeat a summary judgment motion. *See United States ex rel. Doe v. Heart Solution, PC*, 923 F.3d 308, 315-16 (3d Cir. 2019).

October of 2016 that Chruby should have a single cell due to his medical issues to optimize his personal hygiene. (Doc. 127-14).

According to Kowalewski, these letters were considered by the medical staff at SCI Laurel Highlands, who ultimately disagreed with the opinions of these medical providers. In an August 16, 2016 email, Dr. Andrew Dancha, D.O., the Regional Medical Director at SCI Laurel Highlands, stated that Chruby's infections were typically caused by self-manipulation and his own poor hygiene, and further characterized the outside physician letters requiring a single cell to avoid bacteria exposure as "medical nonsense," as "bacteria is everywhere and is unavoidable." (Doc. 122-24 at 2). Similarly, an August 24, 2016, email from Dr. Dancha indicates that Dr. Dancha believed Chruby's infections were caused by issues with his own personal cleanliness habits, not the cleanliness or hygiene of others. (Doc. 122-24 at 5).

Accordingly, the medical staff at SCI Laurel Highlands again deemed Chruby's request for a single cell not medically necessary. Kowalewski and Luther stated that they relied on the DOC physicians' opinions that Chruby did not medically require a single cell. Ultimately, Chruby was transferred to SCI Pittsburgh on October 13, 2016.

7

Chruby filed this action on September 12, 2017. (Doc. 1). In his complaint, he named the defendants from SCI Laurel Highlands as well as correctional and medical staff at SCI Pittsburgh and SCI Mercer. (*Id.*). Following several motions and stipulations, the remaining defendants are Bearjar, Luther, Kowalewski, Shrock, and Wetzel. Chruby alleges that Bearjar violated his First Amendment rights when he retaliated against Chruby for filing lawsuits by putting inmate Welsh into cube 11 with him. (Doc. 1, Count 1). He further alleges that Defendants Luther, Kowalewski, and Shrock violated his Eighth Amendment rights by being deliberately indifferent to his medical needs when they denied him single-cell status. (*Id.*, Count 2). The complaint also asserts a claim for injunctive relief against Defendant Wetzel, requesting a "Z code" status and an order for Chruby to be placed in a single cell. (*Id.*, Count 4).

These remaining defendants have now filed a motion for summary judgment. (Doc. 119). Chruby's response to this motion indicates that he does not oppose the dismissal of his claims for injunctive and declaratory relief. The opposition does not address the defendants' argument that Chruby's First Amendment retaliation claim fails. Rather, Chruby's opposition focuses on the deliberate indifference claim, arguing that

there are genuine issues of material fact that preclude summary judgment on this claim. (*See generally* Doc. 127).

Given Chruby's concession regarding his claims for injunctive and declaratory relief, and further, his lack of response regarding his First Amendment retaliation claim, these claims should be dismissed. Further, after consideration, we conclude that there is no evidence in the record to create a genuine issue of material fact with respect to Chruby's deliberate indifference claim. Accordingly, we recommend that the defendants' motion for summary judgment be granted.

## III. Discussion

### A. Motion for Summary Judgment – Standard of Review

The defendants have filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Rule 56(a) provides that a court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The materiality of the facts will depend on the substantive law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under governing law" will

preclude summary judgment. *Id.* A dispute is only genuine if a reasonable juror could find in favor of the nonmoving party. *Id.*

The moving party bears the initial burden to "demonstrate the absence of a genuine issue of material fact," relying on pleadings, depositions, affidavits, and other evidence in the record. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant "successfully points to evidence of all of the facts needed to decide the case on the law," the nonmovant can still defeat summary judgment by pointing to evidence in the record which creates a genuine dispute of material fact and from which a jury could find in its favor. *El v. Southeastern Pennsylvania Transp. Auth. (SEPTA)*, 479 F.3d 232, 238 (3d Cir. 2007). However, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). A court may not make credibility determinations or weigh the evidence, but "must view the facts in the light most favorable to the non-moving party." *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

B. <u>The Defendants' Motion for Summary Judgment should be Granted.</u>

As we have noted, the plaintiff has indicated that he does not oppose the dismissal of his claim for injunctive relief against Wetzel and his claims for declaratory relief. Accordingly, these claims should be dismissed. In addition, because Chruby has failed to respond to the defendants' motion with respect to his First Amendment retaliation claim against Bearjar, we conclude that the plaintiff has abandoned this claim, and summary judgment should be awarded to the defendants. *See McCowan v. City of Phila.*, 603 F. Supp. 3d 171, 193-94 (E.D. Pa. 2022) (finding that the plaintiff abandoned her claim when she failed to raise it in her opposition to a summary judgment motion); *Cicchiello v. Beard*, 726 F. Supp. 2d 522, 532 (M.D. Pa. 2010) (same). Finally, with respect to Chruby's Eighth Amendment medical deliberate indifference claim, we conclude that there are no genuine disputes of material fact that would preclude summary judgment in favor of the defendants.

The Eighth Amendment protects inmates from "cruel and unusual punishment." U.S. Const. amend. XIII. Prison officials have a duty to provide inmates with "adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the

inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). To be liable for an Eighth Amendment violation, prison officials must have "a sufficiently culpable state of mind," *Farmer*, 511 U.S. at 834, which, in the prison context, is one of "'deliberate indifference' to inmate health and safety." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001) (citation omitted).

In the medical context, an inmate alleging an Eighth Amendment violation must demonstrate that prison officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). Accordingly, an inmate asserting a claim of deliberate indifference must establish that he had a serious medical need, and that prison officials, by affirmative acts or omissions, were deliberately indifferent to that serious medical need. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference in this context can be shown by a failure to provide care, the delay of medical care for non-medical reasons, or denial of reasonable requests for treatment. *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993). However, mere disagreement over a course of treatment does not amount to deliberate indifference. *James v. Pa. Dep't of Corr.*, 230 F. App'x 195, 197 (3d Cir. 2007). Further,

non-medical correctional staff cannot be deemed to be deliberately indifferent "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).

In this case, Chruby asserts that Kowalewski, Shrock, and Luther were deliberately indifferent to his serious medical needs when they denied him single-cell status. With respect to Defendant Shrock, while she had knowledge of Chruby's medical condition, it is equally clear that she was not part of the decision to deny Chruby single-cell status. Shrock testified that she was an RN supervisor at SCI Laurel Highlands at the time of the alleged events. (Doc. 122-11 at 5). She further testified that she did not make decisions regarding single-cell status, and that she was not part of any discussion regarding Chruby's request for a single cell. (*Id.* at 6). Chruby has not provided any evidence to dispute Shrock's statements or to show that she was involved in the decision to deny him single cell status. Accordingly, Chruby has not demonstrated a genuine issue of material fact regarding his claim that Shrock was deliberately indifferent to his serious medical needs.

Defendant Kowalewski also testified that she was not involved in the decision to place an inmate in a single cell. (Doc. 122-9 at 8). She stated that the DOC and vendor physicians were the individuals who made that decision, and that those physicians reviewed the recommendations from Chruby's outside physicians but ultimately determined that Chruby did not medically need to be in a single cell. (*Id.*). Chruby has provided no evidence to dispute this testimony. Rather, he simply points to what he characterizes as an expert report, in which Dr. Jeffrey Montgomery, M.D., opined in an unsworn statement dated December 4, 2022, that the staff at SCI Laurel Highlands did not do enough to minimize Chruby's risk of infection.[4] (Doc. 127-16). However, it is well settled that "disagreement as to the proper medical treatment [does not] support a claim of an [E]ighth [A]mendment violation." *Monmouth Cnty. Corr. Institution Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987); *see also Johnson v. Cash*, 557 F. App'x 102, 103-04 (3d Cir.

---

[4] Notably, the defendants contend that this report, as well as the four opinion letters from Chruby's outside physicians, were not provided to them in response to their discovery requests. (Doc. 128 at 6). Indeed, it appears that the deadline for the plaintiff's expert reports was November 30, 2022, (*see* Doc. 109), and Dr. Montgomery's report is dated December 4, 2022.

14

2013) (affirming the dismissal of a deliberate indifference claim where prison physicians followed a different course of treatment than what was recommended by the inmate's outside medical providers); *DeFranco v. Wolfe*, 387 F. App'x 147, 158-59 (3d Cir. 2010) (same). Accordingly, Chruby has not established a genuine dispute of fact as to Kowalewski's lack of involvement in the decision to provide him with a single cell, and this deliberate indifference claim should be dismissed.

Finally, as to Defendant Luther, we first note that as the Superintendent of the institution, Luther is a non-medical correctional defendant. As we have explained, non-medical correctional defendants will not be deemed to be deliberately indifferent "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Spruill*, 372 F.3d at 236. Here, Luther testified that she relied on the opinions of the DOC and vendor physicians who determined that it was not medically necessary for Chruby to have a single cell. (Doc. 122-12 at 11). Chruby fails to establish that Luther had a reason to believe that he was being mistreated. Rather, he simply continues to point to the opinions of his outside physicians, who were recommending that Chruby be placed in a single cell. As we have

15

noted, however, the mere fact that there was a disagreement between these physicians and the DOC and vendor physicians is not enough to rise to the level of deliberate indifference in violation of the Eighth Amendment. *Monmouth Cnty. Corr. Institution Inmates*, 834 F.2d at 346; *Johnson*, 557 F. App'x at 103-04; *DeFranco*, 387 F. App'x at 158-59.

Ultimately, while there was a disagreement between Chruby's outside physicians and the DOC medical staff as to his need for a single cell, this disagreement does not rise to the level of deliberate indifference. More importantly, the individuals Chruby has sued were entitled to rely on the advice of these DOC and vendor physicians who determined that Chruby did not medically need to be in a single cell. Accordingly, we conclude that Chruby has failed to demonstrate a genuine issue of material fact with respect to this Eighth Amendment claim, and summary judgment should be granted in favor of the defendants.

## IV. Recommendation

For the foregoing reasons, IT IS RECOMMENDED THAT the defendants' motion for summary judgment (Doc. 119) be GRANTED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 3rd day of November 2023.

*s/ Daryl F. Bloom*
Daryl F. Bloom
United States Magistrate Judge
